UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOHN SCHLECHTWEG,** | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 3:21-cv-00785 (VAB) |
| vs. | : | |
| **CELULARITY, INC.,** | : | |
| Defendant. | : | August 18, 2021 |

## AMENDED COMPLAINT

**I.  NATURE OF ACTION**

1. Plaintiff John "Jack" Schlechtweg brings this case against his former employer, Celularity, Inc. for breach of a verbal contract or, alternatively, for unjust enrichment. As set forth in more detail below, Mr. Schlechtweg brings this action because Celularity refused to pay him for his extraordinary and successful efforts to sell and license the company's wound care assets – efforts that were outside the scope of Mr. Schlechtweg's employment with Celularity and which resulted in more than $24 million for Defendant and its owners.

2. In Count One, Mr. Schlechtweg pleads breach of a verbal contract. As detailed below, he alleges in this count that he and Celularity's President formed a verbal contract, that he successfully performed under the contract by selling and licensing the wound care assets, that Celularity breached the contract by refusing to pay him after the sale, and that he was damaged as a result.

3. In Count Two, Mr. Schlechtweg pleads alternatively, if no remedy is available to him by action on the verbal contract, that Celularity unjustly benefitted from his successful efforts in that Celularity refused to pay him to his detriment.

4. Plaintiff claims a jury trial on all claims so triable.

## II. JURISDICTION

5. This Court has jurisdiction due to the diversity of citizenship of the parties and because the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a)(1).

6. Venue is proper within this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District (as explained more fully below) and the Defendant is subject to personal jurisdiction in this District.

## III. PARTIES

7. The plaintiff, Mr. Schlechtweg, is a resident of Easton, Connecticut.

8. The defendant, Celularity, is a corporation organized and formed under the laws of the State of Delaware.  The defendant does substantial business in the State of Connecticut.

## IV. FACTUAL ALLEGATIONS AND LEGAL CLAIMS

### COUNT ONE
### BREACH OF VERBAL CONTRACT

9. Paragraphs 1 through 8 are incorporated by reference as if fully pled in this Count One.

10. Mr. Schlechtweg began working for Defendant Celularity as its Director, Strategic Accounts in Spring 2018.  In May 2019, Mr. Schlechtweg was promoted to Senior Director of Sales.  In those roles Mr. Schlechtweg was tasked with managing a sales force focused on the sale of Celularity's wound care products (Ultra Mist) and Biologics portfolio to hospitals, physician practices and governmental entities.

11. Mr. Schlechtweg was hired to sell, and was tasked with selling, Celularity's products, not its divisions, departments or assets.

12. Before he began working for Celularity as a sales manager, the company presented

Mr. Schlechtweg with an offer letter dated March 27, 2018 [hereinafter, "Offer Letter"]. The Offer Letter extended a "contingent" offer of "terminable at-will" employment in the Director position. The Offer Letter identified Mr. Schlechtweg's base compensation as Director, Strategic Accounts and described certain benefits for which he was eligible.

13. The Offer Letter stated, "This letter agreement may not be amended or modified except by an express written agreement signed by both you and an authorized officer of Celularity." Confusingly, though, it also reserved for Defendant "the right to modify the terms and conditions of your employment at any time."

14. When Mr. Schlechtweg was promoted to Senior Director of Sales in 2019, there was no written amendment or modification memorializing this material change in his employment.

15. The Offer Letter stated that "any action between Celularity and you under this Agreement shall be venued in New Jersey" [emphasis added].

16. From the commencement of his employment with Defendant as Director of Strategic Accounts, through his promotion in 2019 to Senior Director of Sales, and until the end of his employment with Celularity in 2020, Mr. Schlechtweg's work for Celularity occurred in Connecticut.

17. Mr. Schlechtweg's supervisor, Defendant's VP of Sales, Calvin Cole, was fully aware that Mr. Schlechtweg was working for Celularity in Connecticut.

18. From his office in Connecticut Mr. Schlechtweg was responsible for managing a sales staff that consisted of full-time employees and contractors. His main focus was growing sales in wound care and surgical accounts. He oversaw several regional managers and did so primarily from Connecticut. From Connecticut he recruited new staff, held teleconferences, built the training platform and worked with national accounts.

19. Mr. Schlechtweg only occasionally travelled outside of Connecticut in connection with his work for Celularity and, even then, rarely traveled to Celularity's offices in New Jersey.

20. In addition to Mr. Schlechtweg, other employees of Celularity also resided in and worked from Connecticut. Connecticut was also the location of several Cellularity customers and constituted one of Defendant's most profitable states.

21. In or about mid-year 2019, Celularity's CEO, Dr. Robert Hariri, and President, Dr. Steve Brigido, decided to sell or lease the wound care assets of the company.

22. Upon information and belief, Dr. Hariri wanted to convert Celularity from a privately held company into a publicly traded company by merging with a publicly traded special purpose acquisition company.

23. Upon information and belief, Dr. Hariri believed that Celularity would enhance its marketability as a merger candidate if it focused its business exclusively on cancer treatment and discarded the risk and overhead associated with its wound care assets. To accomplish this goal of enhanced marketability, Celularity's wound care assets had to be separated from the company.

24. On or about September 15, 2019, Dr. Brigido asked Mr. Schlechtweg if he would change his primary job function and instead work on the task of selling and licensing Celularity's wound care assets. Dr. Brigido offered Mr. Schlechtweg that, if he was able to sell or lease the assets, he would be "handsomely rewarded" for his services in doing so.

25. Upon information and belief, at the time he made this offer, Dr. Brigido knew that Mr. Schlechtweg was working in Connecticut, and he expected that Mr. Schlechtweg's efforts to sell or lease the wound care assets of the company would be performed by Mr. Schlechtweg in Connecticut.

26. Initially, Mr. Schlechtweg was concerned this offer to change duties would prevent

him from obtaining the sales incentive compensation which was related to his team's sale of products to hospitals, medical practices, and governmental agencies.

27. However, Mr. Schlechtweg decided to rely on Dr. Brigido's promise believing that the reward upon a successful sale would outweigh the likely loss of incentive compensation.

28. Mr. Schlechtweg therefore accepted Dr. Brigido's verbal offer and thereby entered into a verbal agreement with Celularity.

29. In accepting the verbal contract, Mr. Schlechtweg agreed to relinquish his product sales duties in order to work on the sale and lease of the company's wound care assets.

30. Because the verbal contract was a wholly new agreement between Mr. Schlechtweg and Celularity to perform a corporate transaction, it was not an amendment or modification of the Offer Letter which addressed a product sales function.

31. Within days of entering into the verbal contract with Dr. Brigido, Mr. Schlechtweg began working on the sale of the wound care assets from Connecticut by investigating potential buyers, contacting them and commencing negotiations.

32. Mr. Schlechtweg's work from Connecticut to market and sell the division continued throughout the remainder of 2019 and through the first half of 2020.

33. In performance of the contract he made with Dr. Brigido, Mr. Schlechtweg spent considerable time and effort in Connecticut working with investment banks, pitching to investors and searching for potential buyers.

34. Mr. Schlechtweg continued to work on the sale of the wound care assets and accepted a reduction in his incentive compensation because he expected to be "handsomely rewarded" consistent the verbal contract.

35. As a result of his full-time efforts to sell the wound assets, Mr. Schlechtweg was

unable to drive Ultra Mist and Biologic product sales and he therefore suffered a reduction in his overall compensation. Dr. Brigido acknowledged Mr. Schlechtweg was suffering this loss but nevertheless expected Mr. Schlechtweg to continue working on the sale of the wound care assets.

36.  As a direct result of Mr. Schlechtweg's efforts, a purchaser was finally located, and an agreement to purchase and license the wound care assets was successfully negotiated.

37.  Mr. Schlechtweg's efforts resulted in a sale price above market value, and he accomplished this amidst a pandemic.

38.  On or about August 10, 2020, the sale of the wound care assets closed. The purchaser acquired the wound care products, the FDA approval, the good will and name, accounts receivables, and ninety percent of the division staff in return for $24 million in cash and additional millions in expected licensing royalties.

39.  Mr. Schlechtweg's successful efforts also benefitted senior managers at Celularity including Drs. Hariri and Brigido.

40.  Mr. Schlechtweg's successful efforts also improved Celularity's value as a merger partner with a publicly traded acquisition company in that the sale strengthened the Defendant's bottom line in a manner that facilitated a merger. As a result, on January 8, 2021, Celularity announced a merger with GX Acquisition Corp. (a special purpose acquisition company); Dr. Hariri's overall strategy had been accomplished as a result of Mr. Schlechtweg's success.

41.  Immediately after the closing of the sale of the wound care division, Mr. Schlechtweg asked Dr. Brigido when he would receive the promised compensation for his work on the sale. Dr. Brigido responded that he and Dr. Hariri were working on the compensation package but didn't want to give the dollar number yet because the sale had not yet closed. Dr. Brigido also wrote, "You have my word hang tight, working with Bob [Dr. Hariri]."

42. Between August 2020 and December 2020 – well after Defendant had collected the sale proceeds – Mr. Schlechtweg asked Dr. Brigido numerous times about his compensation for his work on the sale. Dr. Brigido consistently responded that he was trying to get the payment for Mr. Schlechtweg.

43. Dr. Brigido never once referenced the Offer Letter as the definitive word on Mr. Schlechtweg's compensation. Instead, Dr. Brigido repeatedly blamed Dr. Hariri for the delay in getting the payment approved and described Dr. Hariri in foul language.

44. On or about December 4, 2020, Mr. Schlechtweg asked Dr. Brigido for another update about the promised compensation. Dr. Brigido wrote back, "with comp committee."

45. Neither Dr. Brigido nor anyone else at Celularity ever denied that Mr. Schlechtweg was owed the promised reward for his work selling the assets.

46. Celularity failed and refused to pay Mr. Schlechtweg despite the fact that his efforts enriched Defendant in an amount exceeding $24 million.

47. Defendant Celularity and Mr. Schlechtweg entered into a verbal contract by which Mr. Schlechtweg would be compensated if he successfully sold and leased Celularity's wound care assets.

48. The verbal contract was not an amendment or modification of the Offer Letter.

49. Mr. Schlechtweg performed pursuant to the verbal contract by successfully selling and leasing Celularity's wound care assets.

50. Despite Mr. Schlechtweg's performance pursuant to the verbal contract, Celularity has refused to compensate him for his efforts.

51. As a result of Defendant's breach Mr. Schlechtweg has suffered damages.

## COUNT TWO in the Alternative
## Unjust Enrichment

52. Paragraphs 1 through 23 are incorporated by reference as if fully pled in this Count Two.

53. On or about September 15, 2019, Mr. Schlechtweg began working on the task of attempting to sell or license Celularity's wound care assets because Celularity's President, Dr. Brigido, told Mr. Schlechtweg that he would be "handsomely rewarded" for his services in doing so.

54. As of September 2019, Dr. Brigido knew that Mr. Schlechtweg was working in Connecticut, and he expected that Mr. Schlechtweg's efforts to sell or lease the wound care assets of the company would be performed by Mr. Schlechtweg in Connecticut.

55. Initially, Mr. Schlechtweg was concerned that his efforts to complete this corporate transaction (i.e. sell or lease the wound care assets) would prevent him from obtaining the sales incentive compensation which was related to his team's sale of products to hospitals, medical practices, and governmental agencies.

56. However, Mr. Schlechtweg decided to work on this different assignment believing that the reward upon a successful sale would outweigh the likely loss of incentive compensation.

57. Because the task of selling the wound care assets was entirely different from his prior positions in product sales for Celularity, the new assignment was not an amendment or modification of nor incorporated within or under the Offer Letter which addressed a product sales function. Accordingly, no contract governed Mr. Schlechtweg's work to sell the assets.

58. Beginning on or about September 17, 2019, Mr. Schlechtweg began working on the sale of the wound care assets from Connecticut by investigating potential buyers, contacting them and commencing negotiations.

59. Mr. Schlechtweg's work from Connecticut to market and sell the wound care assets continued throughout the remainder of 2019 and through the first half of 2020.

60. Mr. Schlechtweg spent considerable time and effort in Connecticut working with investment banks, pitching to investors and searching for potential buyers.

61. Mr. Schlechtweg continued to work on the sale of the wound care assets and accepted a reduction in his incentive compensation because Dr. Brigido encouraged him to do so and because he expected to be "handsomely rewarded".

62. As a result of his full-time efforts to sell the wound assets, Mr. Schlechtweg was unable to drive Ultra Mist and Biologic product sales and he therefore suffered a reduction in his overall compensation. Dr. Brigido acknowledged Mr. Schlechtweg was suffering this loss but nevertheless expected Mr. Schlechtweg to continue working on the sale of the wound care assets.

63. Exclusively as a result of Mr. Schlechtweg's efforts, a purchaser was finally located, and an agreement to purchase and license the wound care assets was successfully negotiated.

64. Mr. Schlechtweg's efforts resulted in a sale price above market value, and he accomplished this amidst a pandemic.

65. On or about August 10, 2020, the sale of the wound care assets closed. The purchaser acquired the wound care products, the FDA approval, the good will and name, accounts receivables and ninety percent of the division staff in return for $24 million in cash and additional millions in expected licensing royalties.

66. Mr. Schlechtweg's successful efforts also benefitted senior managers at Celularity including Drs. Hariri and Brigido.

67. Mr. Schlechtweg's successful efforts also improved Celularity's value as a merger

partner with a publicly traded acquisition company in that the sale strengthened the Defendant's bottom line in a manner that facilitated a merger. As a result, on January 8, 2021, Celularity announced a merger with GX Acquisition Corp. (a special purpose acquisition company); Dr. Hariri's overall strategy had been accomplished as a result of Mr. Schlechtweg's success.

68. Immediately after the closing of the sale of the wound care division, Mr. Schlechtweg asked Dr. Brigido when he would be compensated for his work on the sale. Dr. Brigido responded that he and Dr. Hariri were working on the compensation package but didn't want to give the dollar number yet because the sale had not yet closed. Dr. Brigido also wrote, "You have my word hang tight, working with Bob [Dr. Hariri]."

69. Between August 2020 and December 2020 – well after Defendant had collected the sale proceeds – Mr. Schlechtweg asked Dr. Brigido numerous times about his compensation for his work on the sale. Dr. Brigido consistently responded that he was trying to get the payment for Mr. Schlechtweg.

70. Dr. Brigido never once referenced the Offer Letter as the definitive word on Mr. Schlechtweg's compensation. Instead, Dr. Brigido repeatedly blamed Dr. Hariri for the delay in getting the payment approved and described Dr. Hariri in foul language.

71. On or about December 4, 2020, Mr. Schlechtweg asked Dr. Brigido for another update about the compensation. Dr. Brigido wrote, "with comp committee."

72. Neither Dr. Brigido nor anyone else at Celularity ever denied that Mr. Schlechtweg was owed the reward for his work selling the assets.

73. Celularity intended to encourage, and did encourage, Mr. Schlechtweg to work hard to sell the assets to Celularity's significant benefit.

74. Celularity failed and refused to pay Mr. Schlechtweg despite the fact that his efforts

enriched Defendant in an amount exceeding $24 million.

      75.     Defendant Celularity benefitted because of Mr. Schlechtweg's successful efforts to sell and lease its wound care assets.

      76.     Defendant Celularity unjustly refused to pay Mr. Schlechtweg for the benefit he delivered to the company.

      77.     Defendant Celularity's refusal to pay was to Mr. Schlechtweg's detriment.

* * *

**WHEREFORE**, the plaintiff requests that this Court:

1. Assume jurisdiction over this Complaint;

2. Award money damages to plaintiff;

3. Award interest and costs;

4. Grant such further relief as may be just and equitable.

**THE PLAINTIFF,
JOHN SCHLECHTWEG**

By:  /s/ *Stephen J. Fitzgerald*

Stephen J. Fitzgerald, CT 22939
**GARRISON, LEVIN-EPSTEIN,
    FITZGERALD & PIRROTTI, PC**
405 Orange Street
New Haven, CT  06511
Tel.:  (203) 777-4425
Fax:  (203) 776-3965
E-mail:  sfitzgerald@garrisonlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed electronically on the above-stated date and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                      */s/ Stephen J. Fitzgerald*
                                     Stephen J. Fitzgerald (*ct22939*)