# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN SCHLECHTWEG, | ) | 3:21-CV-785 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CELULARITY, INC., | ) | |
| *Defendant*. | ) | February 23, 2022 |

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY DISCOVERY

Sarala V. Nagala, United States District Judge.

Plaintiff John Schlechtweg brought this action against his former employer, Defendant Celularity, Inc. ("Celularity"), alleging that Celularity breached an oral contract by refusing to compensate him beyond his regular pay, despite his performance of certain duties beyond the scope of his regular employment. Specifically, Schlechtweg filed a two-count amended complaint under Connecticut common law alleging claims of breach of contract and, in the alternative, unjust enrichment.

Celularity seeks to dismiss Schlechtweg's action, contending that: the Court lacks personal jurisdiction over it as a foreign corporation; Schlechtweg fails to state a claim for breach of contract or unjust enrichment under Connecticut law; and venue is improper under 28 U.S.C. § 1391(b). In the alternative, Celularity seeks transfer of this action to the United States District Court for the District of New Jersey under the doctrine of *forum non conveniens*, codified in 28 U.S.C. § 1404(a), to enforce the exclusive venue clause contained in Schlechtweg's employment contract. Finally, Celularity seeks to stay discovery pending resolution of this motion.

For the reasons that follow, the Court agrees with Celularity's argument that the Court

lacks personal jurisdiction over it.  Celularity's motion is thus GRANTED in part.  Because a transfer is in the interests of justice, the Clerk is directed to transfer the action to the United States District Court for the District of New Jersey.  This Court expresses no opinion on the other issues presented in the motion, including whether Schlechtweg states a valid claim for either breach of contract or unjust enrichment under Fed. R. Civ. P. 12(b)(6).

## I.    FACTUAL BACKGROUND

Celularity is a biotech corporation, incorporated under the laws of Delaware with its headquarters and principal place of business in New Jersey.  ECF No. 21, Mot. to Dismiss, Long Decl. ¶ 3; ECF No. 16, Am. Compl. ¶ 8.  Schlechtweg was hired as the Director of Strategic Accounts in the spring of 2018; one year later, he was promoted to Senior Director of Sales.  Am. Compl. ¶ 10.  Both positions involved selling Celularity's wound care products to hospitals, private physician practices, and government entities.  Am. Compl. ¶ 10.  Schlechtweg's employment with Celularity ended in 2020.  *Id.* ¶ 16.

Schlechtweg's employment was memorialized in an employment contract, dated and signed in March of 2018.  Am. Compl. ¶ 12; Mot. to Dismiss, Long Decl., ¶ 7 & Ex. A.  The employment contract references his Director of Strategic Accounts title, contains an integration clause, requires all modifications to take the form of an express written agreement, and contains New Jersey venue and choice-of-law clauses.  Mot. to Dismiss, Ex. A to Long Decl. at 1–2.  With respect to the venue and choice-of-law clauses, the contract provides, in relevant part:  "This agreement will be governed by and construed in accordance with the laws of the state of New Jersey without regard to principles involving conflicts of law, and any action between Celularity and [Schlechtweg] under this Agreement shall be venued in New Jersey."  *Id.* at 2.

Schlechtweg alleges that there was no written amendment to this agreement when he was

promoted to the position of Senior Director of Sales.  Am. Compl. ¶ 14.  Schlechtweg further alleges that he worked from his Connecticut home for the entirety of his employment, with his supervisors' knowledge, and that he rarely traveled to Celularity's offices in New Jersey.  *Id.* ¶¶ 16, 19.

In September 2019, Schlechtweg was allegedly asked by Celularity's President, Dr. Steve Brigido, to change his primary job function.  Am. Compl. ¶ 24.  Around this time, Schlechtweg alleges, Celularity sought to covert from a privately held company into a publicly traded company by merging with a publicly traded company.  *Id.* ¶ 22.  Believing that Celularity would be more marketable for a potential sale if it focused on its cancer treatment products, Celularity decided to sell its division related to its wound care products.  *Id.* ¶ 23.  Schlechtweg alleges that Dr. Brigido thus asked him to cease his work selling wound care products and "instead" work on selling Celularity's wound care assets.  *Id.* ¶ 24.  Dr. Brigido allegedly told Schlechtweg that "if [Schlechtweg] was able to sell or lease the assets, he would be 'handsomely rewarded' for his services in doing so."  *Id.* ¶ 24.  Schlechtweg claims that he chose to accept the new job responsibilities, despite an anticipated decrease in his typical incentive compensation as a salesman, because he believed that the "handsome reward" promised by Dr. Brigido would ultimately outweigh his anticipated incentive compensation.  *Id.* ¶¶ 26–27.

Schlechtweg alleges that, as a result of his efforts, the sale of Celularity's wound care assets closed in August of 2020 for a price of $24 million in cash and additional millions of dollars in expected licensing royalties.  Am. Compl. ¶ 38.  Schlechtweg claims that, as intended, this divestment enhanced Celularity's marketability, and it subsequently merged with a special purpose acquisition company.  *Id.* ¶ 40.

Schlechtweg further alleges that, after the closing of the sale of the wound care division,

he asked Dr. Brigido when he would receive the promised compensation for his work on the sale. *Id.* ¶ 41.  Between August and December 2020, Dr. Brigido repeatedly told Schlechtweg that he was working with Celularity's CEO, Dr. Robert Hariri, and the compensation committee to determine Schlechtweg's compensation for the sale of the wound care assets. *Id.* ¶¶ 41-42, 44. Schlechtweg quotes correspondence with Dr. Brigido in which Dr. Brigido allegedly said: "You have my word hang tight, working with Bob [Dr. Hariri]." *Id.* ¶ 41.  Schlechtweg alleges that he never received the promised compensation. *Id.* ¶ 46.

Schlechtweg filed the present action in June 2021.  ECF No. 1, Compl.  The Amended Complaint raises two claims:  (1) Celularity's breach of the oral contract formed between Schlechtweg and Dr. Brigido regarding the sale of the wound care assets; and (2) in the alternative, Celularity's unjust enrichment arising from Schlechtweg's detrimental reliance on Dr. Brigido's assurance of compensation.  Am. Compl. ¶¶ 50, 74–77.  In lieu of an answer, Celularity filed the present motion to dismiss.  ECF No. 21, Mot. to Dismiss.

The Court begins by addressing whether personal jurisdiction in this forum is proper.

## II.    PERSONAL JURISDICTION

Celularity contends that the Court should dismiss the amended complaint because the Court lacks personal jurisdiction over it as a foreign corporation.  Specifically, Celularity asserts that Connecticut's long-arm statute does not support personal jurisdiction over it and the Court's exercise of personal jurisdiction over Celularity, even if supported by Connecticut law, would not comport with due process.  Mem. in Supp. of Mot. to Dismiss at 9–13.  Schlechtweg denies each assertion, maintaining that Celularity's activities in Connecticut with respect to their clients and Schlechtweg's employment satisfy both Connecticut law and due process.  ECF No. 24, Mem. in Opp. to Mot. to Dismiss at 12–14.

4

A.  <u>Federal Rule of Civil Procedure 12(b)(2)</u>

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise lack of personal jurisdiction as a defense by motion before a responsive pleading.  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (citation and internal quotation marks omitted).  "Although . . . the plaintiff has the ultimate burden of establishing jurisdiction over [a] defendant by a preponderance of the evidence, . . . until an evidentiary hearing is held, [the plaintiff] need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists."  *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (citation omitted).  The pleadings and affidavits "are construed in the light most favorable to [the] plaintiff and all doubts are resolved in its favor."  *Id.*

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits."  *Id.*  Under the law of both the Connecticut Supreme Court and the Second Circuit, personal jurisdiction presents a two-step analysis:  first, the Court must determine whether Connecticut's long-arm statute supports the Court's exercise of personal jurisdiction over the foreign defendant; second, the Court must determine whether such exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Thomason v. Chemical Bank*, 234 Conn. 281, 285–86 (1995) (stating that the Connecticut long-arm statute permits a trial court to exercise personal jurisdiction over a foreign defendant "only if the defendant's intrastate activities meet the requirements both of our statute and of the due process clause of the federal constitution"); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010) ("To determine personal jurisdiction over a non-

domiciliary . . . the Court must engage in a two-step analysis. . . . First, we apply the forum state's

long-arm statute. . . . If the long-arm statute permits personal jurisdiction, the second step is to

analyze whether personal jurisdiction comports with the Due Process Clause of the United States

Constitution." (citations omitted)).

### B. Connecticut's Long-Arm Statute

#### 1. Legal Standard

Connecticut General Statutes § 33-929(f),[1] the long-arm statute applicable to foreign

corporations, provides, in relevant part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this
> state . . . whether or not such foreign corporation is transacting or has transacted
> business in this state . . . on any cause of action arising as follows: (1) Out of any
> contract made in this state or to be performed in this state[.]

This provision of the long-arm statute "confers jurisdiction over designated causes of action

without regard to whether a foreign corporation transacts business in Connecticut and without

regard to a causal connection between the plaintiff's cause of action and the defendant's presence

in this state." *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 253–54 (1983).[2]

Rather than a causal connection, § 33-929(f) requires merely "a nexus between the cause of action

alleged and the conduct of the defendant within the state." *Tomra of N. Am., Inc. v. Env't Prods.*

---

[1] Connecticut General Statutes § 33-929(e) provides that a foreign corporation that transacts business in this state without a certificate of authority from the Secretary of State shall be subject to personal jurisdiction for any suit arising out of such business. Celularity contends that this provision of the long-arm statute, like § 33-929(f), does not support personal jurisdiction over it. ECF No. 21-1, Mem. in Supp. of Mot. to Dismiss at 8. Schlechtweg's opposition makes no reference to § 33-929(e), and at oral argument his counsel disclaimed reliance on it. Because it is the plaintiff's burden to establish a *prima facie* showing of personal jurisdiction and Schlechtweg has not advanced an argument that § 33-929(e) could apply, the Court need not address whether § 33-929(e) supports personal jurisdiction.

[2] The Connecticut Supreme Court in *Lombard Bros.* interpreted Connecticut General Statutes § 33-411(c), which has since been repealed. However, the relevant part of § 33-711(c) was nearly identical to the relevant part of § 33-929(f). *See Lombard Bros.*, 190 Conn. at 153 (quoting § 33-411(c)). Accordingly, district courts interpreting § 33-929(f) have regularly relied on cases interpreting § 33-411(c). *E.g.*, *General Star Indem. Co. v. Anheuser-Busch Cos.*, No. 3:97-CV-2542, 1998 WL 774234, at *3 n.2 (D. Conn. Aug. 24, 1998) ("As the relevant language of [Conn. Gen. Stat. § 33-929 and § 33-411] is identical, the Court will rely on case law interpreting former Conn. Gen. Stat. § 33-411(c).").

*Corp.*, 4 F. Supp. 2d 90, 93 (D. Conn. 1998) (citation and internal quotation marks omitted).

To establish personal jurisdiction under this statute, the "plaintiff must establish *prima facie* that a contract existed and that it was meant to be performed in the state within the meaning of the statute." *Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 23–24 (D. Conn. 1994). In other words, determining whether § 33-929(f)(1) supports personal jurisdiction over a foreign corporation presents two issues: first, whether the plaintiff has met its burden to establish a *prima facie* showing of a contract for the purpose of supporting personal jurisdiction; and second, whether such contract contemplated performance in Connecticut.

### 2. *Existence of a Contract*

With respect to the first issue, neither party addresses whether the Court's inquiry to determine the existence of a contract under Connecticut's long-arm statute functionally duplicates the Court's inquiry to determine whether Schlechtweg states a plausible claim for breach of contract under Fed. R. Civ. P. 12(b)(6). Of course, if the Court were to conclude that it lacks personal jurisdiction over Celularity, any determination of the facial plausibility of Schlechtweg's claim under Fed. R. Civ. P. 12(b)(6) would be largely advisory. As such, the Court's consideration of the existence of a contract that supports personal jurisdiction under § 33-929(f)(1) is limited to that question alone.

With this limited purpose in mind, the Court turns to the issue of whether a contract existed between Schlechtweg and Celularity. In Connecticut "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). Regarding contract formation, "an agreement must be definite and certain as to

its terms and requirements." *Presidential Capital Corp. v. Reale*, 231 Conn. 500, 506 (1994) (citation and internal quotation marks omitted). "So long as any essential matters are left open for further consideration, the contract is not complete. . . . A court may, however, enforce an agreement if the missing terms can be ascertained, either from the express terms or by fair implication. . . . [W]hether a term is essential turns on the particular circumstances of each case." *Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 830 (2014) (citations and internal quotation marks omitted). Moreover, "if the promise on one side of an agreement was too indefinite and vague for enforcement, such promise may be made definite by entire or partial performance by that side, and the agreement, even if originally unenforceable because too vague, then becomes binding." *Augeri v. C.F. Wooding Co.*, 173 Conn. 426, 430 (1977).

Additionally, although contract formation typically requires consideration, the Connecticut Supreme Court has recognized "the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration[.]" *D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 213 (1987) (citation and internal quotation marks omitted). In this context, a promise will constitute an enforceable contract if a promisor "should reasonably expect to induce action . . . on the part of the promisee . . . and which does induce such action . . . [and] if injustice can be avoided only by enforcement of the promise." *Id.* (internal quotation marks omitted) (quoting Restatement (Second) of Contracts § 90 (1973)).

The Court holds that Schlechtweg has adequately pleaded the existence of an oral contract, for purposes of assessing whether § 33-929(f)(1) allows for the exercise of personal jurisdiction over Celularity. Specifically, Schlechtweg's allegations concerning his conversation with Dr. Brigido in September of 2019, taken as true for the purposes of ascertaining personal jurisdiction, *see CutCo*, 806 F.2d at 365, demonstrate a mutual understanding that Schlechtweg would be

"handsomely rewarded" for working on the corporate transaction.    Am. Compl. ¶ 24. Significantly, although Celularity claims that the terms of the agreement were insufficiently vague, the amended complaint has adequately pleaded existence of an agreement between Schlechtweg and Dr. Brigido in which Schlechtweg would divert his attention away from his normal sales role and instead focus on finding a potential buyer for Celularity's wound care assets, in exchange for a sum of money—the "handsome reward."  The task Schlechtweg agreed to undertake, based on the amended complaint's allegations, was clear.

Celularity disputes that a contract was formed, contending that Schlechtweg's allegations of an oral agreement concerning the sale of the wound care assets are too vague to support personal jurisdiction under § 33-929(f).    Specifically, Celularity argues that Schlechtweg's amended complaint "supplies virtually no information whatsoever about this purported agreement," such as:  the timeframe for performance; the identified assets; the manner of Plaintiff's performance; or the expected compensation.  ECF No. 21-1, Mem. in Supp. of Mot. to Dismiss at 15.

Celularity is correct that an enforceable contract requires a certain degree of definiteness and certainty as to its essential terms.  *See Presidential Capital Corp.*, 231 Conn. at 506.  However, "[w]hether a term is essential turns on the particular circumstances of each case."  *Saint Bernard Sch. of Montville, Inc.*, 312 Conn. at 830 (citation and internal quotation marks omitted).  With respect to compensation in particular, the Connecticut Supreme Court has counseled against finding a contract unenforceable where "the missing terms can be ascertained . . . by fair implication."  *Presidential Capital Corp.*, 231 Conn. at 507–08.  In particular, the court reasoned: "[T]he defendant's promise to pay a commission is not made unenforceable merely because he did not include the amount of the commission. . . . In a case such as this, where the plaintiff and the defendant have agreed that the defendant will pay for the plaintiff's services but the agreement is

silent as to the amount of compensation, the court may conclude that the defendant contemplated paying a reasonable fee." *Id.* at 508 (citation and footnote omitted). Thus, a contract that leaves the exact payment terms to be decided later is no less a contract. *See id.*

In this case, the facts as alleged support an inference that Celularity contemplated paying Schlechtweg reasonable compensation following his performance, even though it refrained from determining the specific compensation in advance of his performance. The allegations suggest that the particular amount of compensation required discussion by Celularity's compensation committee after Schlechtweg performed under the contract. *See* ECF No. 16, Am. Compl. ¶¶ 41, 44 (indicating that Dr. Brigido told Schlechtweg that he was working on ascertaining the proper compensation with other Celularity executives and the compensation committee).

For support of its argument that the terms of the oral contract are too vague to be enforceable as a contract, Celularity references *Success Systems*, in which a court in this district held that the plaintiff had failed "to plead specific factual allegations" to support its claim of an oral contract for the purpose of personal jurisdiction under § 33-929(f)(1). *Success Sys., Inc. v. Excentus Corp.*, 439 F. Supp. 3d 31, 54 (D. Conn. 2020). The court in that case emphasized that the plaintiff could not identify a "specific conversation or date of a conversation which took place where a mutual understanding and mutual assent were reached." *Id.* Schlechtweg's allegations are not nearly as vague as those in *Success Systems*, most notably because Schlechtweg alleges that the purported oral contract arose from a particular, identified conversation with Dr. Brigido.

Likewise, Celularity relies on *Geary v. Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 628 (Conn. Ct. App. 2000), in which the Connecticut Appellate Court concluded that there was no enforceable oral employment contract because certain "essential" terms, "such as the duration, salary, fringe benefits and other conditions of employment," were not agreed upon. *Geary*, too, is

distinguishable. There, the plaintiff employee agreed to continue his employment at the defendant company because the defendant orally promised increased compensation, which the plaintiff received, and a promotion, which the plaintiff did not receive. *Geary*, 60 Conn. App. at 624. But the employer expressed merely "an intent to enter into a future contract for employment," which could not give rise to contractual liability. *Id.* The facts of the present case do not suggest that the parties expressed intent to enter into a future agreement, as in *Geary*; rather, Schlechtweg's allegations indicate that the parties' agreement required his immediate performance, and that he did in fact immediately perform. With respect to terms other than compensation, Celularity does not explain why, in the circumstances of the present case, the other terms identified in *Geary*—such as duration and fringe benefits—would be so essential that their absence would render the oral agreement between Schlechtweg and Celularity unenforceable. *See Saint Bernard Sch.*, 312 Conn. at 830 (noting that whether terms are essential depends on the facts of a particular case).

Moreover, even if Dr. Brigido's promise was "too indefinite and vague for enforcement," the Court is persuaded that Schlechtweg alleges entire performance on his part, which can render Dr. Brigido's promise binding on Celularity despite any such vagueness. *See Augeri*, 173 Conn. at 430. Notably, Schlechtweg alleges that, immediately following his conversation with Dr. Brigido, he spent significant time working on the corporate transaction, that he fully performed, and that Celularity recognized that he was entitled to compensation for his performance. ECF No. 16, Am. Compl. ¶¶ 31, 33, 36–38, 41, 44. Because Schlechtweg alleges that he fully performed and that Celularity had acknowledged his performance, Celularity's argument that the agreement was too vague to be enforceable is not persuasive.

In addition, the Court notes that principles of promissory estoppel support the existence of an enforceable agreement in these circumstances. As noted, a promisor may be liable in contract

for the promisee's actions that were induced by the promisee's objectively reasonable reliance on the promise, where injustice can be avoided only by enforcement of the promise. *D'Ulisse-Cupo*, 202 Conn. at 213. Celularity could reasonably have expected Dr. Brigido's assurance of a "handsome[] reward[]" to induce Schlechtweg's reliance on that promise. This reliance allegedly caused Schlechtweg to divert his efforts to the corporate transaction and thus suffer reduced compensation in his regular sales role. ECF No. 16, Am. Compl. ¶ 35. The only way to avoid the injustice of this loss of compensation is enforcement of Celularity's promise.

Celularity's final contention is that the 2018 written employment agreement's integration clause precluded the possibility of new compensation terms for Schlechtweg's work. But Schlechtweg convincingly argues that the alleged 2019 oral agreement was an entirely new and separate agreement that did not seek to modify or amend the 2018 written agreement that pertained to his sales role. Schlechtweg's argument is supported by the language of the 2018 contract itself, which sets forth the "semi-monthly compensation for *this* position"—Schlechtweg's Director of Strategic Accounts role—and describes a Sales Incentive Plan "for [Schlechtweg's] designated role." Mot. to Dismiss, Ex. A to Long Decl. at 2 (emphasis added). This language suggests that the employment agreement is limited to Schlechtweg's role as the Director of Strategic Accounts and does not cover other responsibilities he might have been assigned. The written employment agreement also provides that "the Company has the right to modify the terms and conditions of [Schlechtweg's] employment at any time," lending credence to Schlechtweg's assertion that his duties were modified by the 2019 oral agreement with Dr. Brigido. *Id.* at 3.

Accordingly, the Court concludes that, for the limited purpose of exercising statutory personal jurisdiction, Schlechtweg has established a *prima facie* case of existence of an oral contract resulting from his 2019 conversation with Dr. Brigido.

### 3. Place of Performance

Thus, the Court turns to the second requirement of statutory personal jurisdiction under § 33-919(f)(1), whether such contract was "to be performed" in Connecticut. The Connecticut Supreme Court has broadly interpreted the phrase "to be performed," reasoning that it "refers to the performance that the parties contemplated in the contract, without regard to whether it has actually been performed." *Samelko v. Kingstone Ins. Co.*, 329 Conn. 249, 258 (2018) (footnote omitted). *See also Callahan v. Wisdom*, No. 3:19-CV-350 (KAD), 2020 WL 2061882, at * 9 (D. Conn. Apr. 29, 2020) (noting that the Connecticut Supreme Court "takes an expansive view of the phrase 'to be performed' as used in § 33-929(f)(1)").

"[W]hether the defendant had already performed in the forum is irrelevant," and "it makes no difference whether . . . the defendant, or another party to the contract was required to perform in this state." *Samelko*, 329 Conn. at 258–59. *See also Callahan*, 2020 WL 2061882, at * 9 ("Further, performance by *either* party to the contract can satisfy Section (f)(1)."). Rather, personal jurisdiction under § 33-929(f)(1) is proper when the contract "contemplates performance" in Connecticut, which "turns on 'the totality of contacts which the defendant' obligates itself to have, or contemplates that it will have, in this forum on the basis of the agreed upon performance in the contract." *Samelko*, 329 Conn. at 260 (quoting *Lombard Bros.*, 190 Conn. at 254–55). "The outer boundaries of what qualifies as a contemplated performance are broad." *Id.* at 261.

Schlechtweg's amended complaint alleges that "Dr. Brigido knew that Mr. Schlechtweg was working from Connecticut, and he expected that Mr. Schlechtweg's efforts to sell or lease the wound care assets of the company would be performed by Mr. Schlechtweg in Connecticut." ECF No. 16, Am. Compl. ¶ 25. Likewise, Schlechtweg alleges that he marketed, negotiated, and ultimately sold the wound care assets by "investigating potential buyers, pitching investors,

working with investment bankers, locating the eventual buyer, and conducting negotiations," all of which "took place in Connecticut." ECF No. 24, Mem. in Opp. to Mot. to Dismiss at 12; *see also* Am. Compl. ¶¶ 31–33, 36. Construing the amended complaint in his favor, Schlechtweg alleges that Celularity understood when it hired him that he would perform the majority of his work remotely from Connecticut, and that he indeed performed a substantial portion of his work in this state pursuant to his 2019 oral agreement with Dr. Brigido. These allegations suffice to establish that Schlechtweg's performance of the oral agreement was contemplated, and substantially completed, in Connecticut. *See Callahan*, 2020 WL 2061882, at *10 (finding personal jurisdiction under § 33-929(f)(1) where, "at the time the parties entered into the contract, it was understood and expected that [the plaintiff] would perform the majority of his obligations thereunder from his home in Connecticut" because the defendant employer "knew [the plaintiff] lived in Connecticut when the [defendant] hired him and permitted him to work remotely thereafter," and the plaintiff performed "[t]he bulk of" the work for which he was hired, or "a substantial portion of his obligations," in Connecticut). *Id.*[3]

Celularity maintains that performance of any purported oral agreement was not contemplated in Connecticut, emphasizing the New Jersey choice-of-law provision contained in the written employment contract. Specifically, Celularity contends that a four-factor test governs the question of personal jurisdiction under § 33-929(f)(1): "(1) whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff; (2) whether the contract was negotiated in Connecticut; (3) whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as part

---

[3] *Callahan* presented a different procedural posture, and thus required the plaintiff to "factually support[]" his assertion of personal jurisdiction, a higher burden than the *prima facie* showing that Schlechtweg must make to survive Celularity's motion to dismiss. 2020 WL 2061882 at *4. However, the Court finds its reasoning persuasive and applicable to the more preliminary procedural posture of this case.

of the contractual relationship; and (4) whether the contract contains a Connecticut choice-of-law provision." ECF No. 21-1, Mem. in Supp. of Mot. to Dismiss at 9 (quoting *Fleming v. ISCO Indus., Inc.*, No. 3:17-cv-648 (VAB), 2018 WL 1141358, at *6 (D. Conn. Mar. 2, 2018)); *see Success Sys., Inc.*, 439 F. Supp. 3d at 52. With respect to the fourth factor, a district court has noted that "[a] choice of law provision, while not the sole factor in the [c]ourt's personal jurisdiction analysis, does indicate where the parties intended that the contract be performed." *Fleming*, 2018 WL 1141358 at *7.

However, the Court is not persuaded that this four-factor test governs the question of personal jurisdiction under § 33-929(f)(1) in this case. Although *Fleming* and *Success Systems* applied this test to § 33-929(f)(1), they quoted this test from another case in this district, *Nusbaum & Parrino, P.C. v. Collazo de Colon*, 618 F. Supp. 2d 156, 161 (D. Conn. 2009). The court in *Nusbaum* considered whether an out-of-state defendant's activities in Connecticut constituted "transaction of business" to support jurisdiction under Conn. Gen. Stat. § 52-59b(a)(1), the general long-arm statute that permits exercise of personal jurisdiction over a nonresident individual or partnership under certain circumstances.[4] However, § 52-59b(a)(1) is not analogous to § 33-929(f)(1), which confers jurisdiction "without regard to whether [the defendant] transacts business in Connecticut." *Lombard Bros.*, 190 Conn. at 253–54. Rather, § 52-59b(a)(1) is much more analogous to § 33-929(e), which also concerns jurisdiction when a foreign corporate defendant "transacts business" under circumstances particular to corporations, but which Plaintiff concedes is not applicable to the present case. *See supra* footnote 1. Against this landscape, and in the absence of binding authority regarding the applicability of this four-factor test to an assertion of

---

[4] Specifically, § 52-59b(a)(1) provides, in relevant part: "[A] court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who . . . [t]ransacts any business within the state . . . ."

jurisdiction under § 33-929(f)(1), the Court is not persuaded that this four-factor analysis—and particularly the factor emphasizing the importance of a choice of law provision—governs the question of personal jurisdiction in this case. Moreover, Celularity's arguments regarding the choice-of-law provision in the 2018 written employment contract shed no light on the question of personal jurisdiction with respect to the 2019 oral agreement, which is the basis for this action.

In sum, the Court concludes that Schlechtweg has adequately alleged existence of an oral contract, performance under which was contemplated and substantially performed in Connecticut. As noted, this conclusion does not resolve the question of whether Schlechtweg has stated a claim under Fed. R. Civ. P. 12(b)(6); it merely establishes the existence of a contract in support of the Court's exercise of personal jurisdiction under § 33-929(f)(1). Accordingly, the Court proceeds to consider whether such exercise of personal jurisdiction comports with due process.

### C. Due Process Clause

#### 1. Legal Standard

"Having established that the long-arm statute supports personal jurisdiction, the question then becomes whether such jurisdiction violates the Due Process Clause of the United States Constitution." *H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, Docket No. 3:02-CV-2259 (PCD), 2003 WL 22434080 at *3 (D. Conn. Apr. 11, 2003). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the individual] has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation and internal quotation marks omitted). For a court to exercise personal jurisdiction over a defendant consistent with constitutional due process, the defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).

The requisite minimum contacts may be satisfied in one of two ways: (1) the court may exercise *general* personal jurisdiction if the defendant's "affiliations with the [forum] State are so continuous and systematic as to render them essentially at home in the forum state"; or (2) the court may exercise *specific* personal jurisdiction if the action arises out of or relates to the defendant's contacts with the forum, even if such contacts are limited to a single or an occasional act within the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations and internal quotation marks omitted). General personal jurisdiction, which permits any cause of action against a defendant, is appropriate over a corporation "only where it is incorporated or maintains its principal place of business[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

Specific jurisdiction, which is tailored to the cause of action at issue, is appropriate when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citations and internal quotation marks omitted). In other words, specific jurisdiction is appropriate "if the defendant has 'purposefully directed' [their] activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities[.]" *Id.* at 472–73 (citations and internal quotation marks omitted). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors," such as the parties' interests, the forum state's interest in adjudicating the dispute, and the judiciary's interest in efficient resolution of disputes, to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

## 2. Discussion

The parties do not dispute that the Court lacks general personal jurisdiction over Celularity, given that it is incorporated in Delaware and maintains its principal place of business in New Jersey. Turning to specific personal jurisdiction, however, the Court cannot conclude that exercising personal jurisdiction over Celularity would comport with due process.

The grand total of Schlechtweg's allegations concerning Celularity's contacts with Connecticut are: that Schlechtweg performed his contractual obligations in Connecticut with Celularity's awareness and approval, Am. Compl. ¶ 16; that other Celularity employees resided in Connecticut and work from their homes here, *id.* ¶ 20; and that many of Celularity's customers reside in Connecticut there such that it "constituted one of [Celularity's] most profitable states." *Id.*

However, even if Celularity's relationships with its Connecticut-based clients and employees demonstrated that it had "purposefully directed" its activities at the forum, the present litigation does not "arise out of or relate to" those unidentified clients or employees. *See Burger King*, 471 U.S. at 472–73 (citations and internal quotation marks omitted). For example, Schlechtweg does not allege that he marketed, attempted to sell, or ultimately sold Celularity's wound care division to a Connecticut client. Likewise, Schlechtweg does not allege that the marketing or sale of Celularity's wound care division triggered any "continuing relationships [or] obligations with citizens of" Connecticut such that Celularity should reasonably anticipate "regulation and sanctions in [Connecticut] for the consequences of their actions." *See id.* at 473–74.

Schlechtweg's briefing elided discussion of how the present litigation arises out of or is related to Celularity's other contacts with Connecticut. At oral argument, Schlechtweg's counsel

conceded that Schlechtweg's specific jurisdiction analysis is based only on the allegation that Celularity knew, by virtue of Schlechtweg's remote work arrangement, that Schlechtweg would perform his obligations under the alleged 2019 oral contract in Connecticut.  But the Supreme Court has cautioned that "the plaintiff cannot be the only link between the defendant and the forum" with respect to "the basis for [the court's] jurisdiction over [the defendant]."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  This is because the "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party[.]"  *Burger King*, 471 U.S. at 475 (citations and internal quotation marks omitted).  A defendant's knowledge that an employee "happens to reside in the forum state and conduct some work from home does not constitute purposeful availment."  *Perry v. National Ass'n of Home Builders of U.S.*, No. TDC-20-0454, 2020 WL 5759766, at *4–5 (D. Md. Sept. 28, 2020) (collecting cases); *Callahan*, 2020 WL 2061882, at *11–12 (finding that "the [defendant's] Connecticut-based contacts as they related to the instant dispute begin and end with [the plaintiff], which cannot be the basis upon which due process is satisfied" (citing *Walden*, 571 U.S. at 285)).

Here, Schlechtweg has not shown that Celularity's awareness of his intention to work remotely from Connecticut demonstrates Celularity's affirmative intent to create or maintain an ongoing relationship with Connecticut with respect to the sale of the wound care assets.  Moreover, Schlechtweg has not demonstrated that the present litigation somehow arose from or related to Celularity's other Connecticut-based contacts, such as its clients.  The Court thus cannot conclude that personal jurisdiction would comport with due process.  *See Burger King*, 471 U.S. at 476.

### III.    FAILURE TO STATE A CLAIM

In addition to personal jurisdiction, Celularity raises an alternative ground for dismissal:

failure to state a claim of breach of contract and unjust enrichment under Connecticut law pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 21-1, Mem. in Supp. of Mot. to Dismiss at 15–16, 18–20. However, "a court without [personal] jurisdiction lacks power to dismiss a complaint for failure to state a claim[.]" *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). *See also Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F. Supp. 3d 131, 145 n.10 (S.D.N.Y. 2020) ("Because the Court dismisses the allegations against [the defendant] for lack of personal jurisdiction, it need not address [the defendant's] arguments that the [a]mended [c]omplaint fails to state a claim[.]"). Accordingly, and as noted, the Court expresses no opinion on the issue of whether Schlechtweg has stated a valid claim for breach of contract or unjust enrichment.

### IV.    VENUE

Celularity raises several arguments with respect to venue. First, Celularity contends that venue is improper in this district under Fed. R. Civ. P. 12(b)(3) because it does not satisfy any of the three categories of venue permitted by 28 U.S.C. § 1391(b). In addition, Celularity contends that, even if the Court were to find personal jurisdiction and venue proper, the Court should nevertheless transfer venue to the United States District Court for the District of New Jersey under the doctrine of *forum non conveniens*, codified in 28 U.S.C. § 1404(a),[5] to enforce the exclusive venue clause contained in Schlechtweg's written employment contract. ECF No. 21-1, Mem. in Supp. of Mot. to Dismiss at 22.

The Court declines to reach Celularity's argument under § 1404(a), but will consider whether to transfer this matter to the District of New Jersey, pursuant 28 U.S.C. § 1406(a). Upon

---

[5] 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This provision, which is "merely a codification of the doctrine of *forum non conveniens*," is "the appropriate way to enforce a forum-selection clause pointing to" a particular state forum. *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

a district court's finding that it lacks personal jurisdiction, it has discretion under 28 U.S.C. § 1406(a) to either dismiss the case or transfer it to another forum in which the case could have been properly filed if such transfer is in the interest of justice. *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

Section 1406(a) provides, in relevant part: "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such a case to any district . . . in which it could have been brought." "Despite the section's language suggesting that a § 1406 transfer should be made only if venue is laid in the wrong district, courts have read § 1406 broadly to allow transfers from districts in which venue was properly laid," particularly if the transfer enables "the parties to surmount an obstacle, such as lack of jurisdiction, which would have precluded suit in the transferor district." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992). *See also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *SongByrd, Inc. v. Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (noting that "lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either § 1406(a) or § 1404(a)"); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (applying *Goldlawr* to hold that a district court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in the district, if a transfer would be in the interest of justice." (citation and internal quotation marks omitted)); *Callahan*, 2020 WL 2061882, at *12 (transferring action to the district where the defendants resided, despite lack of personal jurisdiction, because the case could have

21

been brought in the transferee district).

The Court concludes that transfer to the United States District Court for the District of New Jersey is in the interests of justice. First, the United States District Court for the District of New Jersey would have personal jurisdiction over Celularity. While the inquiry into personal jurisdiction typically requires a federal court sitting in diversity to first apply the relevant state long-arm statute, "the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Moreover, the United States District Court for the District of New Jersey would exercise general personal jurisdiction over Celularity, consistent with due process, because Celularity maintains its principal place of business in that forum. *See Daimler*, 571 U.S. at 127. Likewise, venue would be proper in that forum under § 1391(b)(1)—irrespective of the enforceability of the forum-selection clause of the employment contract, or the question of whether "a substantial part of the events or omissions giving rise to the claim occurred" in New Jersey under § 1391(b)(2)—because Celularity resides in New Jersey, by virtue of it being subject to personal jurisdiction in that court. *See* 28 U.S.C. § 1391(b)(1) (venue is proper in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located); *id.* § 1391(c)(2) (corporate defendant resides in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question). Accordingly, the action could have been properly filed in the United States District Court for the District of New Jersey.

In addition, "[c]ourts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice," and should take into account whether the claim plainly is unmeritorious before transferring a case. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435-36 (2d Cir. 2005) (noting that a court "should dismiss the case rather than waste the time of another court" if

"a peek at the merits . . . reveals that the case is a sure loser in the court that has jurisdiction") (citations and internal quotation marks omitted); *Callahan*, 2020 WL 2061882, at *13 (transferring, rather than dismissing, where "the merits of this case [had] yet to be litigated"). The Court's limited review of the merits here does not reveal any reason the case might be "clearly doomed," such as being time barred, that would counsel against transfer. *See Daniel*, 428 F.3d at 436. Nor does Schlechtweg appear to have lacked diligence in selecting this forum. *See Spar*, 956 F.2d at 394 (dismissing action because "allowing a transfer in this case would reward [the] plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice."). Finally, transfer would not "unduly prejudice" Celularity because the transferee forum is the forum in which it is domiciled, and Celularity itself has requested such a transfer. Accordingly, the Court concludes that transfer to the United States District Court for the District of New Jersey would be in the interest of justice.

## V.    STAY OF DISCOVERY

In addition to seeking dismissal or transfer of venue, Celularity moves for a stay of discovery pending the Court's resolution of its motion to dismiss pursuant to Fed. R. Civ. P. 26(c). The Court declines to address the issue of a stay of discovery. Because the Court is transferring this action to another court, and because that court will have discretion to manage the docket, the Court concludes that Celularity's motion to stay discovery is moot.

## VI.    CONCLUSION

**For the foregoing reasons, Celularity's motion to dismiss, ECF No. 21, is GRANTED in part, insofar as it requests a finding that this Court lacks personal jurisdiction over it and requests transfer of the action to the District of New Jersey.** Celularity's motion to stay discovery under Fed. R. Civ. P. 26(c) is **DENIED AS MOOT**.

**This action is transferred to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406(a).  The Clerk is directed to effectuate the transfer.**

**SO ORDERED** at Hartford, Connecticut, this 23rd day of February, 2022.

        */s/ Sarala V. Nagala*
        SARALA V. NAGALA
        UNITED STATES DISTRICT JUDGE